UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

TYLER DUNKIN, *as Administrator of the Estate of* :
*Douglas Dunkin, Deceased, and in his own right,* :
         Plaintiff, :
          :
       v. :   No.  5:22-cv-2969
          :
D.F. CHASE, INC., et al., :
         Defendants. :
_____

**O P I N I O N**

**Defendant's Motion to Transfer or Dismiss, ECF No. 8 – Granted**

**Joseph F. Leeson, Jr.**                                                              September 2, 2022
**United States District Judge**

**I.    INTRODUCTION**

      This matter involves claims by Plaintiff Tyler Dunkin, administrator of the estate of Douglas Dunkin.[1] The Complaint avers that Douglas Dunkin suffered a fatal incident while working with a concrete-cutting saw manufactured by Defendant Husqvarna Professional Products, Inc. at a construction site overseen by Defendant Precast Services, Inc. (PSI), and Defendant D.F. Chase, Inc.

      After removing this case to the Eastern District of Pennsylvania, Defendants now move to have the case transferred to the Middle District of Pennsylvania, asserting that venue is improper in this district. Following a review of the briefing on this matter, this Court concludes that venue is improper in the Eastern District of Pennsylvania. Accordingly, Defendants' motion

---

[1] References throughout the Opinion to Douglas Dunkin use his full name, while references to Plaintiff Tyler Dunkin are abbreviated to "Dunkin."

is granted, and this matter is transferred to the Middle District of Pennsylvania, where venue is proper.

## II.   BACKGROUND

The background is largely taken from allegations in Dunkin's Complaint.  *See* Not. of Removal at Ex. A ("Compl."), ECF No. 1-5.  On August 28, 2020, Douglas Dunkin was killed while working on a construction site in Carlisle, Pennsylvania.  *See id.* ¶ 28.  D.F. Chase was the general contractor on the project, *see id.* ¶ 52, and PSI was a contractor on the project, *see id.* ¶ 55.  At the time of the incident, Douglas Dunkin was using a "Husqvarna K 760 Cut-n-Break saw." *See id.* ¶ 37.  He was using it to cut wall paneling.  *See id.*  While using the saw, it kicked back, the blade detached from the saw, and it struck Douglas Dunkin in the neck.  *See id.* ¶¶ 38–39.  The injuries that Douglas Dunkin suffered from the sawblade were fatal.  *See id.* ¶ 40.

On April 20, 2022, Dunkin filed a Complaint in the Court of Common Pleas of Philadelphia County.  *See* ECF No. 1.  On July 28, 2022, Defendants removed the case to this Court.  *See id.*  On August 5, 2022, Defendants filed the present motion to transfer this matter.  *See* Mot., ECF No. 8.  After a response and reply, the motion is ready for review.  *See* Resp., ECF No. 15; Reply, ECF No. 19.

## III.   LEGAL STANDARDS

### A.   Motion to Transfer or Dismiss for Improper Venue – Review of Applicable Law

Title 28 U.S.C. § 1391 "govern[s] the venue of all civil actions brought in district courts of the United States."  *See* 28 U.S.C. § 1391(a)(1).  According to § 1391(b), a civil action may be brought in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

See id. § 1391(b)(1)–(3).

Where venue is to be determined based on defendant's residency under § 1391(b)(1), § 1391(d) governs the rules for determining whether a defendant is a resident of any given district. See id. § 1391(d). Specifically,

> in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction *if that district were a separate State*, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

See id. § 1391(d) (emphasis added); see also Kershner v. Komatsu Ltd., 305 F. Supp. 3d 605, 609 (E.D. Pa. 2018) ("[F]or venue to be proper in the Eastern District, Defendants must have sufficient contacts within the district to subject it to personal jurisdiction, 'as if the Eastern District were a separate state.'" (quoting Johnson v. Gabriel Bros., Inc., No. 13-7415, 2014 WL 2921652, at *2 (E.D. Pa. June 27, 2014))).

Practically, to determine whether a defendant resides in the Eastern District of Pennsylvania under § 1391(d), the Court must conduct a personal jurisdiction analysis, whereby it treats the defendant as a foreign corporation and the Eastern District of Pennsylvania as a separate state. See id. (citing ICA Group, LLC v. Taggart Group LLC, No. 12-6156, 2013 WL 159936, at *1 (E.D. Pa. Jan. 15, 2013)).

### B. Personal Jurisdiction – Review of Applicable Law

Pennsylvania's long-arm statute provides that "the jurisdiction of the tribunals of this Commonwealth shall extend . . . to the fullest extent allowed under the Constitution of the

United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 PA. CONS. STAT. § 5322(b); *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992) ("The Pennsylvania [long-arm] statute permits the courts of that state to exercise personal jurisdiction over nonresident defendants to the constitutional limits of the due process clause of the fourteenth amendment." (citing *North Penn Gas Co. v. Corning Nat. Gas Corp.*, 897 F.2d 687, 688–90 (3d Cir. 1990))). "Accordingly, in determining whether personal jurisdiction exists," this Court must ask "whether, under the Due Process Clause [of the Fourteenth Amendment], the defendant has 'certain minimum contacts with . . . [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316–17 (3d Cir. 2007) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). "These basic due process principles are reflected in the two recognized types of personal jurisdiction"—general jurisdiction and specific jurisdiction. *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007).

      **1.**      **General Jurisdiction – Review of Applicable Law**

In 2011, the Supreme Court reimagined the landscape of general jurisdiction in *Goodyear Dunlop Tire Opers., S.A. v. Brown,* 564 U.S. 915 (2011). Therein, the Court held that "a foreign corporation is subject to general personal jurisdiction only where it 'is fairly regarded as at home.'" *See In re Asbestos Prods. Liab. Litig. (No. VI)*, 384 F. Supp. 3d 532, 538 (E.D. Pa. 2019) (quoting *Goodyear*, 564 U.S. at 924). Thereafter, in 2014, the Supreme Court clarified "that a corporation is typically 'at home' in only two places: its state of incorporation and the state in which it has its principal place of business." *See id.* (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137, 139 n.19 (2014)). As one court puts it, "*Daimler* completed the turn away from

*International Shoe*'s factual analysis of substantial contacts in favor of a fairly straight forward bright-line test" for general jurisdiction.  See id.

### 2. Specific Jurisdiction – The "Minimum Contacts" Test – Review of Applicable Law

A court may exercise *specific* jurisdiction where a "plaintiff's claim arise[s] from the defendant's contacts with the forum in which the court sits." *Hepp v. Facebook, Inc.*, 476 F. Supp. 3d 81, 86 (E.D. Pa. 2020) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14 (1984)); *Marten*, 499 F.3d at 296 ("Specific jurisdiction exists when the claim arises from or relates to conduct purposely directed at the forum state.").

The Third Circuit has outlined a three-part inquiry for determining whether an exercise of specific jurisdiction is appropriate under the traditional "minimum contacts" test:

> First, the defendant must have "'purposefully directed' his activities" at the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 472 (1985) (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 (1984)).  Second, the plaintiff's claim must "arise out of or relate to" at least one of those specific activities. *Helicopteros,* 466 U.S. at 414.  Third, courts may consider additional factors to ensure that the assertion of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" *Burger King,* 471 U.S. at 476 (quoting *Int'l Shoe,* 326 U.S. at 320).

*Marten*, 499 F.3d at 296.

To satisfy the first element of the inquiry, "[t]here must be a 'deliberate targeting of the forum.'"  See *Lutz v. Rakuten, Inc.*, 376 F. Supp. 3d 455, 463–64 (E.D. Pa. 2019) (quoting *O'Connor*, 496 F.3d at 317).  "Moreover, 'the defendant must have purposefully avail[ed] itself of the privilege of conducting activities within the forum.'" *See id.* at 464 (quoting *O'Connor*, 496 F.3d at 317).  With respect to the second element, "'the litigation must arise out of or relate to at least one of those activities' that was purposefully directed at the forum."  *See id.* (quoting

*O'Connor*, 496 F.3d at 317). "This 'analysis should hew closely to the reciprocity principle upon which specific jurisdiction rests.'" *Id.* (quoting *O'Connor*, 496 F.3d at 323). When the first two elements of the inquiry are satisfied, the existence of minimum contacts is established, making "jurisdiction presumptively constitutional." *O'Connor*, 496 F.3d at 324. In such circumstances, courts must then consider whether the exercise of jurisdiction "would otherwise comport with the traditional notions of fair play and substantial justice," and a "defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King*, 471 U.S. at 477).

## IV.   ANALYSIS

In order to determine where the Defendants "reside" for the purpose of § 1391(d), this Court must perform a fictitious personal jurisdiction analysis on each Defendant. *Kershner*, 305 F. Supp. 3d at 609. In particular, this Court must determine whether specific or general jurisdiction may be properly exercised over one of the Defendants in the Eastern District of Pennsylvania, presuming, for purposes of this analysis, that the Eastern District represents a separate state. *See id.*

After undertaking this analysis, this Court concludes that personal jurisdiction would not lie in this District over any Defendant. Accordingly, because no Defendant resides in this District under § 1391(d), venue here is improper under § 1391(b)(1). Moreover, venue in this District is improper under § 1391(b)(2), since none of the events giving rise to the claims took place in this District. Accordingly, in the interest of justice, this Court transfers this matter to the Middle District of Pennsylvania, where venue is proper.

A.     **Personal Jurisdiction Analysis to Establish Residency under § 1391(d)**

1.     **Specific Jurisdiction**

As noted above, specific jurisdiction contemplates that the Defendant's contacts with the forum are *related* to the case at bar. *Marten*, 499 F.3d at 296 ("Specific jurisdiction exists when the claim arises from or relates to conduct purposely directed at the forum state."). Here, Dunkin makes no allegations that any of the Defendants had contacts with the Eastern District related to the death of Douglas Dunkin. In particular, Dunkin alleges that the fatal incident took place entirely in Carlisle, Pennsylvania, which is in the Middle District.

To be sure, Dunkin alleges certain "contacts" that the Defendants have with the Eastern District; however, he wholly fails to relate those contacts to the instant action. For example, Dunkin alleges that PSI engaged in work in the King of Prussia area, which is situated in the Eastern District. However, Dunkin in no way alleges that Douglas Dunkin was injured while working on the King of Prussia project or otherwise relates the King of Prussia contacts to the case at hand. Additionally, Dunkin asserts that, in a wholly separate matter, the Pennsylvania Superior Court found venue proper over Husqvarna in Philadelphia, which is situated in the Eastern District. Accordingly, Dunkin believes that this Court should find venue proper over Husqvarna based solely on the Superior Court's finding. This argument ignores the relatedness requirement of specific jurisdiction. That the Superior Court found venue proper over Husqvarna in an unrelated matter in no way compels a finding that there exists matter-specific contacts sufficient to establish venue over Husqvarna in this case. Rather, Dunkin bears the burden to (1) establish sufficient contacts between Husqvarna and this District, and (2) establish

a relatedness between those contacts and the instant matter. That burden is not carried by simply pointing to a finding of venue in a wholly unrelated matter.

Accordingly, Dunkin has failed to establish that this Court could exercise specific jurisdiction over the Defendants in the Eastern District, such that they could be said to reside here under § 1391(b)(1) and (d). Having found no specific jurisdiction over Defendants, this Court turns to whether Dunkin has established general jurisdiction.

### 2. General Jurisdiction

As indicated above, general jurisdiction over a defendant only lies where they are "at home." *See In re Asbestos*, 384 F. Supp. 3d at 538 (quoting *Goodyear*, 564 U.S. at 924). With respect to corporations, the Supreme Court has indicated that a defendant corporation is "at home" in the state in which it is incorporated and that in which it maintains its principal place of business. *See id.* (citing *Daimler*, 571 U.S. at 137, 139 n.19). Here, Dunkin has failed to establish that general jurisdiction could be properly exercised over any of the Defendants in the Eastern District, such that they could be said to reside here.

Foremost, Husqvarna is incorporated in North Carolina, and it maintains a principal place of business in the same state. *See* Mot. 7.[2] Accordingly, there is no basis for finding Husqvarna to be "at home" in the Eastern District of Pennsylvania.

---

[2] In his response to the present motion, Dunkin provides no evidence or acknowledgment of Husqvarna's state of incorporation or principal place of business. Notwithstanding, in his Complaint, Dunkin avers that Husqvarna is incorporated in Delaware with its principal place of business in North Carolina. *See* Compl. Notwithstanding, regardless of whether Husqvarna is incorporated in Delaware or North Carolina, the outcome is the same: it is not "at home" in the Eastern District of Pennsylvania.

Next, Dunkin recognizes in his response to the present motion that PSI is an Ohio corporation with its principal place of business in the same state.  *See* Resp. 6.  Therefore, there is no basis for finding PSI "at home" in this District.

Finally, D.F. Chase is a Tennessee corporation with its principal place of business in the same state.  *See* Compl. ¶ 7; Resp. 6.  Accordingly, there is no basis for finding D.F. Chase to be "at home" in the Eastern District.

Dunkin acknowledges these facts, yet tries to argue that each Defendant is amenable to general jurisdiction in the Eastern District, nonetheless.  Primarily, Dunkin argues that each Defendant has certain connections to this District that warrant a finding of residency.  *See* Resp. 6 ("PSI has done substantial work in King of Prussia on the King of Prussia mall parking garage and conducts business out of a Pennsylvania office . . . ."); *see also id.* ("D.F. Chase, although a Tennessee corporation, has an agent for service of process located in Philadelphia County and has established significant contacts in the state.").  However, Dunkin's arguments fail under the standards announced in *Goodyear* and *Daimler*.  As the Court noted above, the Supreme Court abandoned the "continuous and systematic contacts" test for general jurisdiction, in favor of the bright-line test this Court applies above.  That each of these Defendants has contacts with the Eastern District of Pennsylvania does not render them amenable to general jurisdiction therein.  To the contrary, Dunkin's attempt to cobble together a contact or two for each Defendant is all the more reason to find they are not "at home" in this District.

Accordingly, Dunkin has failed to establish that the exercise of general jurisdiction over any of the Defendants would be proper in the Eastern District of Pennsylvania.

B.     **Venue in the Eastern District Is Improper**

After an application of the test governing the residency of Defendants under § 1391, this Court concludes that no Defendant "resides" in the Eastern District of Pennsylvania as the statute uses the term. Having determined that no Defendant so resides, venue is not proper in this District under § 1391(b)(1).

Moreover, venue is not proper in this District under § 1391(b)(2). In order for venue to lie in this District under § 1391(b)(2), a substantial portion of the events giving rise to the claims must have occurred in this District. As Dunkin's own Complaint makes clear, the events giving rise to his claims did not occur in the Eastern District. Rather, the majority of the acts and omissions giving rise to the claims occurred in Carlisle, Pennsylvania, at the construction site where Douglas Dunkin was fatally injured. Carlisle, Pennsylvania is situated in the Middle District of Pennsylvania. Dunkin does not allege that any events leading to his claims took place in the Eastern District. Accordingly, venue is not proper under § 1391(b)(2) in this District. However, as the Court explains below, venue is proper in the Middle District of Pennsylvania.

C.     **Venue in the Middle District is Proper**

When faced with a matter lying in an improper venue, "the district court . . . shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *See* 28 U.S.C. § 1406(a). While venue in this matter is improper in the Eastern District, venue is proper in the Middle District of Pennsylvania under § 1391(b)(2).[3]

---

[3]     The Court notes that venue is also likely proper in the Middle District under § 1391(b)(1). At a minimum, D.F. Chase and PSI undertook a construction project in the Middle District of Pennsylvania, availing themselves of the privileges and protections of doing business there. Those contacts relate directly to the injuries that Dunkin alleges. Accordingly, at least one Defendant has established sufficient minimum contacts with the Middle District such that it can be said to reside there under § 1391(d).

In particular, a majority of the events giving rise to the claim took place in the Middle District. In his Complaint, Dunkin claims that Douglas Dunkin was killed while working on a construction project in Carlisle, Pennsylvania, which is situated in the Middle District. Additionally, Dunkin claims that PSI and D.F. Chase owed Douglas Dunkin a duty of care by reason of their supervision over and work on the subject construction site in the Middle District.

Accordingly, based on the allegations in Dunkin's Complaint, a substantial portion of the events giving rise to the claim occurred in the Middle District of Pennsylvania. Therefore, venue is proper in the Middle District under § 1391(b)(2), and in the interest of justice, this Court transfers the matter to the Middle District of Pennsylvania.

## V. CONCLUSION

Following a review of the Complaint and briefing, this Court concludes that venue in this district is improper under both § 1391(b)(1) and § 1391(b)(2). Accordingly, in the interest of justice, this Court transfers this matter to the Middle District of Pennsylvania, where venue is proper.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge